*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PAUL WAYNE MALESKI,

        Defendant-Appellant.

UNPUBLISHED
January 24, 2025
10:53 AM

No. 368798
Grand Traverse Circuit Court
LC No. 2022-014124-FC

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

Defendant, Paul Wayne Maleski, pleaded guilty to assault by strangulation, MCL 750.84(1)(b), as a second-offense habitual offender, MCL 769.10. The trial court sentenced him to 10 to 15 years' imprisonment. Maleski now appeals as on leave granted following a remand from our Supreme Court.[1] He challenges the calculation of his sentencing guidelines score and the proportionality of his sentence. We affirm.

## I. BACKGROUND

This case arises out of Maleski strangling the victim, a romantic partner, during unconsented sexual intercourse in May 2022. Prior to the assault, Maleski and the victim had engaged in consensual sexual intercourse for several hours. During the last hour, however, the victim told Maleski she was unable to continue. Maleski ignored her and continued having sex with her. The continued contact resulted in numerous injuries and culminated in Maleski strangling her.

Several days later, a third party reported the assault and the victim's injuries to the police. One of the injuries the third party reported was that Maleski had bit the victim on the right side of her face. The police went to interview the victim and located her at Maleski's residence. When the police arrived, Maleski and the victim were sitting in Maleski's car in the driveway to his

---

[1] *People v Maleski*, ___ Mich ___ (2024).

residence. While talking with the victim, a police officer noticed swelling and bruising on her left cheek and bruising on the left side of her neck just below her jawline. According to the police, she appeared extremely frightened and reluctant to speak with them.

Although she initially denied the assault, the victim eventually informed the police that Maleski assaulted her, causing her injuries, and explained that she wanted to get away from him. She told the police that during the assault she was weak and exhausted to the point she could barely stand up, and that Maleski held her up from behind by grabbing her waist area, which caused injuries to her thighs, buttocks, and crotch area. Maleski became angry about the victim's sexual performance and strangled her. While strangling her, he bit her on the cheek. Regarding the strangulation, the victim stated that Maleski grabbed and squeezed her trachea, causing bruising to her neck. This caused her to gurgle and gasp for air. Although she did not lose consciousness, she believed she was close to losing consciousness. Her initial report resulted in the police arresting Maleski.

During a later interview, the victim further reported that, between the assault and his arrest, Maleski had barely let her out of his sight and had forced her to go everywhere with him. She stated that he would prevent her from leaving by standing in her way and taking her car keys. On the night of Maleski's arrest, the victim did not want to leave the residence with him, but Maleski told her that, if she did not go with him, he would kidnap her, so she complied to avoid being assaulted again. The victim also stated that Maleski had told her that he would harm her family if she did not do as he told her.

During a subsequent interview, the victim provided details of the sexual encounter with Maleski. When asked whether the sex on the night of the strangulation incident was consensual, she indicated that it was and that she never denied him. She explained that the sex lasted for almost six hours. During the last hour of intercourse, she told Maleski she could not do it anymore, but he continued anyway.

The prosecution charged Maleski with assault by strangulation and domestic violence, third offense, and the charge included a fourth-offense habitual-offender notice. Maleski pleaded guilty to assault by strangulation as a second-offense habitual offender. In exchange, the prosecution dismissed a third-offense domestic violence charge and a fourth-offense habitual-offender notice.

At the plea hearing, Maleski admitted that he assaulted the victim by strangulation through suffocation. He agreed that he became angry with the victim and put his hands around her neck, trying to choke her. He also agreed he cut off her air.

The trial court sentenced Maleski in September 2022. During the sentencing hearing, Maleski challenged the proposed point assessments for Offense Variable (OV) 7 and OV 8.[2] The

---

[2] Maleski also challenged the assessment of 10 points for OV 3, asserting that only five points should be assessed. The trial court maintained the assessment of 10 points, but this is not challenged in this appeal.

trial court assessed 50 points for OV 7, concluding that Maleski's conduct was sadistic. Regarding OV 7, the trial court stated:

> The incident in question involved hours of sexual intercourse, the last couple of which she objected to but couldn't resist, couldn't stop him, and it included a strangulation which included being bitten in the cheek. And, the injuries the officer observed were consistent with a bite on the cheek in addition to the bruises around her neck, which would be part of the strangulation, so I thing [sic] that is here and we'll score 50 points.

The trial court also assessed 15 points for OV 8, concluding that the victim was held captive for longer than necessary to complete the offense. The trial court calculated Maleski's recommended guidelines minimum sentence range to be 38 to 95 months' imprisonment.

Maleski spoke at sentencing. He expressed remorse for his actions and requested a rehabilitation program because of his history of narcotic use.

The trial court stated that it found the case disturbing and noted that the incident involved "hours of abuse." It reviewed the presentence investigation report and discussed Maleski's prior domestic violence convictions. The trial court stated that Maleski was not "fixable" and that when he was released he was going to hurt women in the future, so the public needed to be protected as long as possible. The trial court departed from the recommended sentencing guidelines range of 38 to 95 months' imprisonment and sentenced Maleski to serve 10 to 15 years' imprisonment. The trial court explained that this departure was because of his prior prison commitments and several prior convictions for similar behavior. The trial court further noted that the departure was for the protection of the public.

Maleski filed an application for leave to appeal with this Court, which we denied for lack of merit in the grounds presented.[3] He then filed an application for leave to appeal to the Supreme Court, which remanded the case to this Court for consideration as on leave granted.[4] This appeal followed.

## II. OFFENSE VARIABLE SCORING

Maleski first argues that the trial court erred by assessing points for OV 7 and OV 8. We disagree.

Regarding scoring of the sentencing guidelines, we review the trial court's factual determinations for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error occurs if "the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted). The facts supporting a guidelines enhancement must be established by a

---

[3] *People v Maleski*, unpublished order of the Court of Appeals, entered April 18, 2024 (Docket No. 368798).

[4] *People v Maleski*, ___ Mich ___ (2024).

preponderance of the evidence. *Hardy*, 494 Mich at 438. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

## A. OV 7

Maleski argues that the trial court erred by assessing 50 points for OV 7 because the trial court erroneously determined he acted with sadism. The trial court must assess 50 points for OV 7 when a victim is treated with "sadism, torture, excessive brutality, or similar egregious conduct designed to significantly increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). OV 7 is scored for conduct occurring during the sentencing offense. *People v Rodriguez*, 327 Mich App 573, 578; 935 NW2d 51 (2019). "If the case involves conduct consisting of one or more of the categories of sadism, torture, or excessive brutality, then OV 7 applies." *People v Lydic*, 335 Mich App 486, 496; 967 NW2d 847 (2021). Only when the case involves "similarly egregious conduct" does the trial court need to determine if the conduct was designed to substantially increase the victim's fear or anxiety. *Id.* at 496-497. " '[S]adism' means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3).

There was sufficient evidence to support the trial court's conclusion that Maleski acted with sadism or extreme brutality and its assessment of 50 points for OV 7. As the trial court acknowledged, Maleski continued to sexually penetrate the victim for some time after she told him she could not continue, holding her up from behind and causing injuries. He ultimately choked her because of his displeasure with her sexual performance. Even before considering the fact that Maleski bit the victim during the assault, the record amply supports a conclusion that Maleski subjected the victim to extreme or prolonged pain or humiliation that was inflicted to produce suffering or for the offender's gratification. See *People v Lowrey*, 342 Mich App 99, 121; 993 NW2d 62 (2022). He choked her when he felt he was not sexually gratified. He also bit her face. This conduct is sufficient to trigger the 50-point enhancement for sadism and extreme brutality.

## B. OV 8

Maleski next argues that zero points should have been assessed for OV 8 because the victim was not held captive beyond the time required to commit the offense. We again disagree. A trial court must assess 15 points when scoring OV 8 if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Because the relevant section of MCL 777.38 "does not provide for consideration of conduct after the completion of the sentencing offense, it must be scored solely on the basis of [defendant's] conduct before or during the sentencing offense." *People v Allen*, 331 Mich App 587, 596; 953 NW2d 460 (2020), vacated in part on other grounds 507 Mich 856 (2021). Any amount of time the victim is held past what is required to commit the offense justifies scoring OV 8. *People v Chelmicki*, 305 Mich App 58, 70; 850 NW2d 612 (2014).

We focus our review on the Maleski's conduct before he strangled the victim. The victim reported that she told Maleski she could no longer continue having sex an hour before he stopped having sex with her. During that last hour of intercourse, he strangled her because of his

unhappiness with her sexual performance, and he had held her up from behind while penetrating her when she was too weak and exhausted to stand up. This was sufficient to allow the trial court to find by a preponderance of the evidence that the victim was held captive longer than necessary to commit assault by strangulation. See *id*. at 70.

### III. PROPORTIONALITY OF DEPARTURE SENTENCE

Maleski argues that the trial court abused its discretion by imposing a sentence that departed from the maximum end of the guidelines range by 25 months. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a sentence for reasonableness, the standard of review is for abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "A trial court abuses its discretion if the imposed sentence is not 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 7 (citation omitted). A trial court also may abuse its discretion by "failing to provide adequate reasons for the extent of the departure sentence imposed." *Steanhouse*, 500 Mich at 476.

A trial court must consult and continue to take the advisory sentencing guidelines into account when sentencing. *Lockridge*, 498 Mich at 391. Trial courts may " 'depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime.' " *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017) (citation omitted). The trial court may consider, but is not limited to, the following factors:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. at 352-353 (quotation marks and citation omitted).]

Maleski argues that the trial court's 10-point assessment for OV 3 (physical injury to victim) and 50-point assessment for OV 7 adequately addressed the seriousness of the offense, and that the Prior Record Variables (PRV) adequately addressed his prior record. But the trial court noted various aspects of the offense that the guidelines did not account for. For example, the trial court noted that the victim was Maleski's girlfriend, toward whom he had been abusive on a number of occasions, which was not contemplated by the scoring of the OVs or PRVs. See *Walden*, 319 Mich App at 352-353. The trial court also reviewed Maleski's prior prison sentences for domestic violence, noting that this incident occurred only six months after his release from prison, while he was still on parole. The trial court explained that the departure was justified because the prior offenses were also domestic violence, not unrelated violations, and Maleski kept reoffending with similar behavior, something the guidelines do not account for. The trial court also properly considered Maleski's potential for rehabilitation, stating that he "is not fixable" and "dangerous."

The trial court provided adequate explanation for the 25-month departure and adequate explanation of how the sentence was proportionate to the offense and the offender. It acknowledged that this sentence represented a departure from the sentencing guidelines. In addition to the reasoning already stated, the trial court emphasized the need to incapacitate Maleski and protect the public. It noted that he would eventually be released, but the trial court's goal was to keep him from harming others as long as possible. This rationale was reasonable considering Maleski's record and troubling nature of the sentencing offense. The trial court did not abuse its discretion when it sentenced Maleski to 10 to 15 years' imprisonment because the sentence was proportionate to the offense and the offender.

We affirm.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado